Statement of Facts.


P. McCULLOUGH, COM., v. EXPRESSMAN'S ASS'N.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 16, 1890—Decided March 10, 1890.
[To be reported.]

Insanity is a "sickness or other disability," within the meaning of the
constitution and by-laws of a beneficial society providing for the pay-
ment of weekly benefits to a member "who, through sickness or other
disability," is unable to earn a livelihood for himself and family.


Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS,
McCOLLUM and MITCHELL, JJ.

No. 95 July Term 1889, Sup. Ct.; court below, No. 1008
June Term 1887, C. P. No. 3.


On September 3, 1887, Patrick McCullough, committee of
the person and estate of Thomas J. McAneny, a lunatic, brought
assumpsit against the Expressman's Mutual Beneficial Associa-
tion of Pennsylvania, to recover sick benefits alleged to be due
to said lunatic, as a member of the defendant association.
Issue.

At the trial on February 13, 1889, the following facts were
agreed upon for the purpose of making a reservation of ques-
tions of law:

Thomas J. McAneny became a member of the Expressman's
Beneficial Association above named on September 9, 1883. He
became insane in April, 1884, and was committed to the State
Hospital for the Insane at Norristown, on June 2, 1884, by the
Court of Quarter Sessions of Philadelphia county, where he
remained supported by the public expense until the trial, with
the exception of a few weeks when he was at home with his
sister. His dues to the association defendant were punctually
paid by him up to the time of his becoming insane, and there-
after said dues were duly paid by his brother and received by
the proper officer of said association, until April, 1885, when
said association refused to accept his dues tendered by the
brother at the proper time and place. In October, 1884, the

Statement of Facts.

brother and sister of said Thomas J. McAneny made application for sick benefits to said association, and thereafter received a postal card from the proper officer of said association, reading as follows :

PHILADELPHIA, Nov. 11, 1884.

The case in the hands of a special committee who will see you in a short time, and it will be settled by next meeting. The delay has been unavoidable. Assuring you that every thing will be settled correctly, I remain yours,

J. P. BRASELMAN.

Subsequently the association refused to pay the benefits claimed.

By proceedings in the Court of Common Pleas, No. 1 of Philadelphia, said Thomas J. McAneny was declared a lunatic, and the above-named Patrick McCullough was duly appointed a committee of the person and estate of said McAneny. Immediately thereafter, a demand was made on the secretary of said association by the plaintiff as committee of said McAneny, for alleged benefits due him by reason of his insanity, which was refused.

The said Thomas J. McAneny has been unable to follow his usual or any other employment since September 9, 1884. Prior to his insanity, he was a freight conductor on the Pennsylvania railroad, where he had been for nine years.

The constitution of the defendant association contains the following provisions :

ARTICLE II.

Object.

This corporation is formed for the purpose of accumulating a fund by the contributions of members, which shall enable them to assist each other in cases of accident, sickness or other distress, and their families in case of death.

ARTICLE IX.

Benefits.

Every member of this association entitled to benefits under its charter or by-laws, who, through sickness or other disability, is unable to follow his usual business or some other occupation whereby he may earn a livelihood for himself and family, shall be entitled to such sums (as weekly benefits) as the by-laws shall specify. But should his disease or disability be local and

apparently permanent, and his health otherwise good, and his disability not be such as to prevent other men similarly afflicted from following some honorable calling, then he shall not be considered beneficial; and provided, that such member is not three months in arrears, and that his sickness or disability has not originated from intemperance, vicious or immoral conduct. Any member who shall be taken sick or be disabled while in arrears to the association three months' dues, cannot, by payment of his arrearages, become beneficial during such sickness; nor can he claim benefits at any time for any known infirmities that occurred previous to his admission into the association.

### ARTICLE X.
### Deaths.

When a member dies, who has belonged to this association one year and who is not three months in arrears, his legal representatives shall receive from the funds of this association a sum of money to be fixed by the by-laws; and if the wife of such a member dies he shall receive a sum of money likewise to be fixed by the by-laws.

The by-laws provided that at each meeting the roll should be called, and each member, on answering to his name, should pay to the secretary his monthly dues to the association; that any member in arrears for six months should be erased from the roll, and no excuse whatsoever should be entertained; that the funds of the association should not be disposed of or transferred unless for the actual necessary expense of its business, properly conducted, for the benefit of distressed brothers, their widows, and the funeral expenses allowed by its laws; that applications for sick benefits should be made in writing by members; that all members so applying, who resided in the city of Philadelphia, should be visited by the stewards of the association, who should, if in their opinion the sick member was entitled to benefits, pay them to him, taking a receipt therefor. The by-laws also contained the following provisions:

### ARTICLE XIII.

SEC. 1. Any member who, after twelve months' membership, through sickness or disability, is unable to follow his usual or some other business or occupation whatsoever, whereby he may earn a livelihood for himself and family, on appli-

action in writing addressed to the secretary, setting forth the nature of his disease or injury, and whether contagious or not, shall receive ten ($10) dollars per week, sick benefits, but for no fractional part of a week; but should his disease or disability be local and apparently permanent, and his health otherwise good, and the disability not be such as to prevent other men similarly afflicted from following some honorable calling, then he shall not be considered beneficial. . . . . .

ARTICLE XIV.

Of members.

Sec. 4. Any member who may think himself aggrieved by the refusal of the stewards to grant the benefits he may claim, shall make his appeal to the association at the following stated meeting, and if he can prove that they did not comply with the by-laws regulating their action, and that their action was incorrect, the association may reverse their decision; but failing to prove such charge (if made), the stewards shall be sustained. If any member, before appealing to the association, shall commence a suit of law to recover an alleged claim he shall be expelled.

From the time McAneny became a member of the association until January 30, 1885, when amendments were approved by the Court of Common Pleas No. 2 of Philadelphia county, the following provision was in force in the place of article IX. of the constitution:

Sec. 1. Each member of this association, at such times as the by-laws shall prescribe, if from sickness or other disability is unable to follow his usual or other occupation, shall be entitled to receive from the funds of the association such sums, not less than five dollars per week, as the by-laws shall specify, provided that such sickness or disability is not produced by intemperance or immoral conduct; . . . .

During the same period the following provision was in force in the place of § 1, article XIII. of the by-laws:

Sec. 1. Every member of this association, having been one year a member, and who is in good standing, who shall become unable to follow his usual occupation or other calling, either from sickness or other disability, shall be entitled to receive five dollars per week, provided such sickness or disability was not occasioned by intemperance or grossly immoral conduct, or

from some cause which originated before he became a member of the association; provided, also, he shall have complied with the requirements of the by-laws and constitution.

Upon the foregoing facts, the court, FINLETTER, P. J., reserved the following questions, viz.: "Whether insanity is sickness or disability, within the meaning of the constitution and by-laws of the association defendant; and whether a committee of a lunatic can recover sick benefits during the period of the insanity of the member, under the aforesaid constitution and by-laws of said association." Subject to this reservation the jury rendered a verdict for the plaintiff for $1,117.80.

After argument, the court entered judgment on the reserved questions for the defendant, non obstante veredicto, FINLETTER, P. J., delivering the following opinion:

This action is brought by the committee of Thomas J. McAneny, a lunatic. Nine months after he became a member of the association he became hopelessly insane, and was removed to the state asylum, and still remains there. His dues were paid by his relatives or his committee for about a year, when the association refused to receive them. By article 13 of the by-laws, a member is not entitled to benefits until after twelve months.

The question arises was he a member in good standing and entitled to benefits? He was not, when he became insane. He was thereby prevented from performing any of the duties of membership, and the association was prevented from holding him in any way responsible. They could not exact dues from him, nor could they require from him the performance of any duties. He could not be tried for any dereliction of duty. Benefits are the correlatives of duties performed or to be performed, and when they cannot be exacted or performed the benefits should cease.

To sustain the verdict in this case would be to bring ruin upon this and kindred associations, not for the purpose of aiding the insane man, but to pay his creditors, or accumulate a fund for his heirs or representatives. That this was not the intention of the association is evident from article II. of the constitution, which is as follows: Object. This corporation is formed for the purpose of accumulating a fund by contribu-

Opinion of Court below.

tions of members, which shall enable them to assist each other in cases of accident, sickness or other distress." The by-laws also provide that the benefits shall be paid weekly to the sick member, who shall give a receipt. "To assist each other," can mean nothing else than that the funds shall be expended in supporting each other. It never could have been contemplated that this fund should be used for other alien purposes.

We have heretofore considered the matter as if insanity was a case of "accident, sickness, distress or disability." That it is all of this, in some sense, is undoubtedly true. But was it intended to be one of the calamities for which they provided? It must be conceded that the members of this association considered those terms in the ordinary and common meaning as afflictions of the body. Insanity is not considered a "sickness" by men generally, and disability, among workingmen, is a physical injury which interferes with their ability to perform labor.

That this association intended this to be their meaning may be inferred from § 1, article XIII. of the by-laws, which gives the benefits: "But should his disease or disability be local or apparently permanent, and his health otherwise good, and the disability not be such as to prevent other men similarly afflicted from following some honorable calling," etc. Of like import is § 3, article XIII., which refers to sick members residing out of the city, and requires them to perform certain things which only a sane man could do. Article IX. requires the stewards to visit the sick weekly, and pay them and take their receipts. All these requirements indicate a sickness or disability which is consistent with a mental capacity to perform them. We have come to the conclusion that insanity is not a sickness or disability which entitles a member to benefits.

Judgment is therefore entered for the defendant on the points reserved.

Thereupon the plaintiff took this appeal, specifying that the court erred:

1. In entering judgment for the defendant on the questions reserved.

2. In not entering judgment for the plaintiff on the facts agreed upon.

*Mr. W. Horace Hepburn* (with him *Mr. John F. Develin*), for the appellant:

1. The opinion of the court below starts out with the assumption that McAneny ceased to be a member when he became sick, because he was thereby prevented from performing any of the duties of membership and dues could not be exacted from him. This assumption is against all the decided cases. The only duty that can be exacted from a sick member is the payment of his dues, and a failure to pay them would not be excused on the ground of insanity, because payment is an act that can be performed by another person for the beneficiary: Hawshaw v. Supreme Lodge, 29 Fed. R. 770; Wheeler v. Insurance Co., 82 N. Y. 543 (37 Am. Rep. 594); Thompson v. Insurance Co., 104 U. S. 88. In the present case, the dues were paid by McAneny's brother, and received by the association for a year after he became sick.

2. The argument that payment of benefits would not aid the insane member, but would go to his creditors or heirs, is unsound. When he became insane, he did not lose his physical existence, and the benefits are needed to supply his physical wants. As his relatives were unable to provide for these, he was committed to the state hospital for the insane; but the state should not be compelled to aid him, as it is the duty of the association to do so under its contract. It has never been doubted that insanity is a sickness entitling a member of such a society to sick benefits: Burton v. Eyden, L. R. 8 Q. B. 295; Kelley v. Hibernians, 9 Daly 292; Niblack on Mutual Benefit Societies, § 173. Moreover, in the laws of the association defendant the words are "sickness or other disability," which cover every possible calamity preventing the member from following his usual or any other calling.

3. The court below, however, held that by the amended by-law, § 1, of article XIII., which was passed some five months after McAneny became entitled to benefits, the association intended to exclude insanity. It is difficult to understand how such a construction can be placed upon it as to exclude from benefits a member whose sickness or disability, although permanent, is of such a nature as to prevent his following any occupation whatsoever. McAneny was admittedly unable, during the period for which benefits are here claimed, to follow his

usual calling or any other. But, if it were possible to hold that insanity were intended to be excluded by this by-law, it would be void as applied to McAneny, since his rights were vested on September 9, 1883, and he was no party to the amendment. It has never been doubted that a committee is the proper person to sue for moneys due the lunatic.

*Mr. Thomas R. Elcock*, for the appellee:

1. As McAneny became a member of the association on September 9, 1883, and became insane in April, 1884, he had not been a member for the period of one year, and was not entitled to benefits. Nor can it be said that he continued a member by reason of some other person paying his dues for him, for a lunatic cannot be a member. He cannot perform his duties as such. He cannot answer roll-call so as to pay his dues, as required by § 14 of by-law II. nor can any one answer for him. He thus becomes in arrears, and after six months shall be dropped from the roll; and no excuse whatsoever shall be entertained: § 16, by-law II. Further, how can an insane man comply with the rules respecting applications for benefits, especially § 3 of by-law XIII.?

2. Moreover, it is not shown that the stewards were ever asked to take action in this case, and no decision by them in McAneny's favor is shown. This suit is therefore barred by § 4 of by-law XVII. If McAneny could not recover as a sane man, by reason of failure to comply with the by-laws, why should he recover when insane? If an insane member is to have a different rule from sane members, where is it in the constitution and by-laws? It is of no importance, in this connection, whether insanity is sickness or not, because if it is, the member must comply with the law of the association on the subject of sick benefits, or he cannot recover, and McAneny has not done so.

3. But why need we discuss the question whether insanity is sickness or not. Scientific schools have been unable to decide it. Nine tenths of the insanity that exists is hereditary. Who can tell to which tenth McAneny's belongs? None of the writers on the medical jurisprudence of insanity define any of its manifestations under the term sickness. Burton v. Eyden, L. R. 8 Q. B. 295, is the only case deciding that insan-

Opinion of the Court.

ity is sickness, and Niblack on Mutual Benefit Societies so defines it on the authority of that case alone. The funds of this association are not intended for a member's creditors, nor for the benefit of any person else. Money cannot be paid for McAneny's benefit. The state has no claim on the association. The error of the appellant's argument lies in the supposition that sick benefits are weekly debts due by the association. Such is not the case; its relation to its members is not that of debtor and creditor: St. Patrick's Beneficial Soc. v. McVey, 92 Pa. 510.

OPINION, MR. JUSTICE MITCHELL:

The jury have found for the plaintiff, and we must therefore assume that all the necessary facts were duly proved. This disposes of a considerable part of the argument for the appellee, and leaves open to us only the question of law involved in the point reserved, whether insanity is sickness or disability, within the meaning of the contract.

The operative words are contained in the following passages from the constitution and by-laws of the association: Constitution, article 9 : " Every member . . . . . who, through sickness or other disability, is unable to follow his usual business or some other occupation whereby he may earn a livelihood for himself and family, shall be entitled to such sums (as weekly benefits) as the by-laws shall specify ; " and by-laws, article 13, § 1: "Any member, who, after twelve months' membership, through sickness or disability is unable to follow his usual or some other business or occupation whatsoever . . . . . shall receive," etc. We cannot regard the meaning of this language as at all doubtful. That insanity is a sickness in some senses of the word is beyond question, and such legal authorities as appear to have considered the question hold that it is sickness within the meaning of such charters and articles of association as the defendant's. Thus in Burton v. Eyden, L. R. 8 Q. B. 295, an action against a " friendly society," the English designation of associations like the present appellee, the words of the by-law were, "during any sickness or accident that may befall him." BLACKBURN, J., said: " I am of opinion that lunacy is sickness, within the meaning of the rules of this society. . . . . Insanity depends on the state of mind and body

Opinion of the Court.

of the person. . . . . It certainly seems to me that lunacy is a sickness affecting the health of the body in such a way as to prevent a man's ability of earning his livelihood. If it were not the intention to include it, the rules of the society should be framed so as expressly to exclude it." And QUAIN, J., said further: "I am also of opinion that insanity is sickness within the society's rules. . . . . The words entitling the member to relief are, 'during any sickness or accident,' except certain excluded cases, insanity not being one." In Kelly v. Ancient Order, 9 Daly 292, VAN BRUNT, J., says: "Insanity has always been considered a disease, and comes strictly within the meaning of the term sickness." And in Pellazzino v. St. Joseph's Society, 16 Cin. Law Bul. 27, it is assumed by HARMON, J., apparently without question by either party, that insanity entitles a member of such society to sick benefits.

But, even if the extent of the word sickness were doubtful, the present case is relieved of all difficulty by the additional phrase "other disability." The purpose of the association is defined by article II. of the constitution as the accumulation of a fund to enable the members "to assist each other in cases of accident, sickness, or other distress, and their families in case of death." The common class of those who are expected to need the benefits, is defined in article IX., as already said, as those who, through sickness or other disability, are unable to follow their usual or some other business, whereby they may earn a livelihood for themselves and their families. To this class is added another in article X., to wit, the families of members who die, and members themselves whose wives die. The latter are clearly examples of that pecuniary distress which is enumerated in the constitution among the ills which it is the object to relieve. But the main idea, throughout, is the assistance of those who are incapacitated for earning their living, and the condition that the incapacity shall be from "sickness or other disability" is as comprehensive as language could well make it. If insanity is not sickness, it is certainly disability, and clearly within the prescribed condition for aid. Certain excepted cases are specified, but not only is insanity not one of them, but all of those which are thus specified, such as want of membership for twelve months, arrearages to the association, or sickness originating from intemperance, vicious or immoral

Syllabus.

conduct, either fail in some necessary requirement, or bear some taint of fault which takes them out of the category of the innocent unfortunate for whom the relief is intended. If any of these exceptional facts were charged against the plaintiff, the verdict of the jury has settled them in his favor, and there is no reason shown why he should not have the relief to which under the rules of the association his disability entitles him.

Judgment reversed, and now judgment for plaintiff on the verdict.